FERNWOOD INDUSTRIES, INC., et al. *v.* MITCHELL, etc.

Dec. 14, 1953

No. 38932 46 Adv. S. 56 68 So. 2d 830

332

*Satterfield, Ewing, Williams & Shell,* Jackson, for appellant.

No attorney for appellee.

ROBERDS, P. J.

The question for decision herein is whether or not William Henry Owens, twelve years of age, was a dependent of Floyd Mitchell at the time of Mitchell's death, November 13, 1951, within the meaning of the Mississippi Workmen's Compensation Law. The attorney-referee, the Commission, and the Circuit Judge held he was such dependent.

Claimant is the acknowledged illegitimate son of Mitchell. Such child is entitled to benefits "* * * if dependent upon the deceased," Section 2 (12), Chapter 354, General Laws of Mississippi, 1948, as amended by Chapter 412, General Laws of Mississippi, 1950.

This is a summary of the proof upon that question:

Rosa Mae Owens Smith testified that she is the mother of the claimant. She has been married four years to Cleon Smith. Claimant, since her marriage to Smith, has been and was, at the time of the trial, living in the home with her and Smith, and expected to so continue. She and Smith are supporting him—furnishing him a home, his food, and his clothing. They send him to school. The testimony is vague as to the extent of the support of claimant by Mitchell before the marriage of Rosa Mae Owens to Smith. Apparently it had been practically nothing for a number of years. But giving applicant the benefit of the doubt and confining the contributions made by Mitchell to the period since said marriage, it is shown that he has furnished to claimant one pair of pants and two pairs of "blue jeans" and one shirt, and now and then has given him a nickel, dime or quarter. "Q. Did he ever give William Henry any money? A. Yes, be about a nickel, dime or quarter, was not much." She also said that at infrequent intervals

the father came to see claimant and claimant went to visit the father. She said that would happen four or five times a year. This is the pertinent part of her testimony in her own words: "Q. He did not buy any groceries for these children at all? A. No, sir. Q. Did not buy a thing for William Henry to eat? A. No, sir. Q. Not only that, he has not bought anything for him in the way of clothing but one pair of pants? What else was it? A. Two pairs blue jeans and shirt. Q. Is that all he bought in about four years? A. Yes, sir, about four years. Q. Uh-huh. And about him giving him any spending money, you didn't know about that? A. No, sir, I didn't know about that. Q. He has not given him any spending money? A. He ain't given him much, about a nickel or dime, something like that. Q. Every once in a while? A. Yes, sir. Q. Cleon Smith has been taking care of that boy? A. Yes, sir. Q. Been doing it four years? A. Yes, sir." Claimant refers to Smith as his "Daddy", and she and Smith expect to continue to support and care for claimant.

The other only witness on this question was the claimant himself. He said he called Mitchell "Daddy"; that his father would sometimes carry him places; his father gave him two pairs of "blue jeans" and a shirt.

A more accurate conclusion can be reached from his verbatim testimony than from a summary thereof. We now set out the most pertinent parts of his testimony:

"Q. Now, you live in the house with your mama and Cleon Smith, don't you? A. Yes, sir. Q. Now, Cleon Smith is the man, is the daddy to all you children there in the house, isn't he? A. Yes, sir. Q. He sort of makes you all mind? A. Yes, sir. Q. If you all act ugly he is the one who paddles you? A. Yes, sir. Q. Is he the one who brings home groceries to you? A. Yes, sir. Q. Buys your clothes, too? A. Yes, sir. Q. He makes you go to school? A. Yes, sir. Q. If you don't go to school he gets out the switch, doesn't he? A. Yes, sir. Q. You

call Cleon Smith your daddy? A. Yes, sir. Q. You refer to him as Daddy? A. Yes, sir. Q. You look at him as though he were your natural daddy? A. Yes, sir. Q. Does your daddy Cleon Smith give you spending money sometimes? A. Yes, sir. Q. Lets you go buy 'Popsicles' sometimes? A. Yes, sir. Q. Lets you buy Holloway suckers? A. Yes, sir. Q. Does he bring you home clothes when you need clothes? A. Yes, sir. Q. Cleon Smith does? A. Yes, sir. Q. You see him every day, don't you? A. Yes, sir. Q. You are living in the same house with him, aren't you? A. Yes, sir. Q. And you have been for a long time, haven't you? A. Yes, sir. Q. And when Floyd Mitchell was killed, you were in the house with your daddy Cleon Smith? A. Yes, sir. Q. And he was taking care of you then, wasn't he? A. Yes, sir. Q. When your daddy Floyd Mitchell came over to see you, he would come not too often, but every once in a while, is that right? A. Yes, sir. Q. You say he would give you a little spending money? A. Yes, sir. Q. How much would he give you? A. Sometimes he would give me a quarter, but at least he gave me a dime.'' He said they had been living in Brookhaven for a long time and he was asked if the ''blue jeans'' and pants were the only clothing Floyd Mitchell had given him during that time and he replied ''Yes, sir.''

The Workmen's Compensation Act, and our decisions, have settled some pertinent principles applicable to the question under consideration.

 All questions of dependency shall be determined as of the time of the injury. Section 9 (g), Chapter 354, Laws 1948, as amended by Chapter 412, Laws 1950. While Section 2 (18) of said Act provides that '' * * * children under the age of eighteen years are presumed to be dependent,'' such presumption does not apply to illegitimate children. The fact of dependency must be shown. Jane Ann Stanford v. Mrs. Marjorie Stanford, et al., No. 38968, handed down December 7, 1953. And even

in cases where the presumption exists the fact of non-dependency may be shown. It is a rebuttable presumption. Thomas v. Contractor's Material Company, Inc., 213 Miss. 672, 57 So. 2d 494.

As to the definition of dependency, this Court, in Deemer Lumber Co. et al. v. Hamilton, 211 Miss. 673, 52 So. 2d 634, quoted this language, taken from 58 Am. Jur., Workmen's Compensation, Section 162: "As a very general proposition, it may be said that a dependent is one who looked to or relied on the decedent for support and maintenance. Reliance must have been placed upon the deceased employee to provide the applicant for compensation, in some measure or to some extent, with his or her future living expenses. And where this is the case, it is not material that the contributions were made at irregular intervals, or in differing amounts, nor that the money was paid in accordance with the provisions of a contract. The purpose of the statute is to provide the workman's dependent in the future with something in substitution for what has been lost by the workman's death, and, consequently, to establish dependency, the applicant for compensation must show that he or she had reasonable grounds to anticipate future support from the decedent. This reasonable expectation of continuing or future support and maintenance seems to be the true criterion as to who are dependents."

Section 163 of the same text provides: "A person may be a dependent of an employee within the purview of the statute although the dependence is only partial * * * While according to the construction placed on the term 'dependent' by some of the courts, the applicant, in order to be entitled to compensation, must show that he or she was dependent upon the deceased employee for the 'ordinary necessaries of life,' in a majority of jurisdictions the view seems to have been accepted that dependency within the terms of the statute does not mean absolute dependency for the necessities of life, but

rather that the applicant looked to and relied on the contributions of the workman, in whole or in part, as a means of support and maintenance in accordance with his or her social position and accustomed mode of life. A person may be a dependent, according to this view, although able to maintain himself without any assistance from the decedent. Even though the person furnishing the support has a smaller income than the alleged dependent, this will not necessarily prevent the existence of a condition of dependency. The test is not in a comparison between the relative ability of the contributor and the alleged dependent, but in the latter's reliance upon the former for maintenance, in whole or in part. A person may be a dependent of the deceased workman although possessed of some property, or supported in part by other members of the family.'' In an Alabama case that court said: ''In general, it may be said an actual dependent is one who looked to decedent, partially or wholly, for support. The reasonable expectation of continuing support seems to be the general criterion.'' Ex Parte Woodward v. Crowder, 99 So. 649.

It will be noted that Cleon Smith was the acknowledged stepfather of claimant. Section 2 (13) of the Mississippi Act provides that '' 'Parent' includes step-parents and parents by adoption, parents-in-law, or any person who for more than three years prior to the death of the deceased employee stood in the place of a parent to him or her, if dependent on the injured employee.'' Clearly, William Henry Owens would have been entitled to compensation through Smith under the Workmen's Compensation Act. That would have produced an anomalous situation had Smith and Mitchell both died. Hoover v. Central Iowa Fuel Co. (Iowa), 176 N. W. 945.

At most then, the contributions by Mitchell to the support and maintenance of claimant during the last four years consisted of three pairs of pants, a shirt and now and then a nickel, dime or quarter. Claimant was

living in the home of his mother and stepfather; they were furnishing him all clothing, sustenance, and school expense. Tested by the past, claimant had no expectation of receiving any substantial support whatever from Mitchell in the future. Therefore, somewhat regretfully, we are forced to the conclusion claimant was not a dependent of Floyd Mitchell.

Reversed and judgment for appellant.

*Hall, Kyle, Holmes*, and *Lotterhos, JJ.*, concur.